UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHNNIE LEE JORDAN, JR.,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　Case No. 3:23cv24730-LC-HTC

B. OAKES,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Johnnie Lee Jordan, Jr., a prisoner proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint under 42 U.S.C. § 1983 alleging Defendant Oakes retaliated against him while he was confined at Okaloosa Correctional Institution ("Okaloosa CI") for filing a lawsuit. Doc. 9. After reviewing Plaintiff's original complaint, the Court concluded it failed to state a claim on which relief may be granted. Nevertheless, the Court gave Plaintiff an opportunity to amend the complaint and advised him of the legal standards applicable to retaliation and access to the courts claims. Plaintiff's amended complaint, however, still fails to contain factual allegations which state a claim for either retaliation or a denial of access to the courts. Thus, this case should be dismissed with prejudice.

I. **Background**

Plaintiff's amended complaint names B. Oakes, a Major at Okaloosa CI, as the sole Defendant. The amended complaint contains the following allegations.

While confined at Okaloosa CI in April 2022, Plaintiff "believes" he gave Ms. Glenhardt or another legal mail employee a § 1983 complaint against several Okaloosa CI officials to mail to this Court. *See* N.D. Fla. Case No. 3:22cv5101-MCR-ZCB. Sometime after he did so, Defendant Oakes ran into Plaintiff at the legal mail window, gave him "a threatening stare," and stated: "You're Johnnie Jordan? I finally get to meet you." This alarmed Plaintiff, as he claims Oakes was "pretending" he did not know Plaintiff despite Plaintiff "filing many different grievances on [Oakes'] staff." Plaintiff "expresses a belief" that Ms. Glenhardt told Oakes that Plaintiff had filed Case No. 3:22cv5101-MCR-ZCB because he has "heard her gossiping with … Oakes about grievances" he filed. Plaintiff "expresses a belief" that Oakes then notified Assistant Warden Dove and Classification Officer Kerry Metaleska about the lawsuit and persuaded them to have an inmate named Willy Neal placed in Plaintiff's cell, so Neal would falsely allege Plaintiff committed PREA[1] and he could be placed in confinement as punishment for filing the lawsuit.

---

[1] "PREA" stands for Prison Rape Elimination Act, so the Court assumes Plaintiff is referring to sexual assault.

Case No. 3:23cv24730-LC-HTC

When Neal was moved into Plaintiff's cell in April 2022, Neal stated: "Look man, they put me in here with you for me to watch you, and report back to them." Plaintiff "became alert" when Neal made this comment because Plaintiff had previously filed grievances asserting he "was being put into [cells] with certain type[s] of inmates by security," and security was placing those inmates in Plaintiff's cell so a fight would occur and Plaintiff could be placed in confinement.

One night in April 2022, Neal "was talking to himself nonstop" while inmates were "locked down for count." Plaintiff "became aggravated, but politely asked … Neal to stop talking out loud to himself." Neal got angry with Plaintiff and Plaintiff asked who moved Neal into the cell to watch Plaintiff. Neal became more upset and stated: "The white shirt and them did dumb ass … , they don't like how you keep filing all them grievances, and want to get you for filing that lawsuit on them folks."[2] Neal also advised Plaintiff the Institutional Classification Team ("ICT") had released him from confinement before they became cellmates and that Neal "and the white shirt were cool with each other because the white shirt" had previously moved Neal away from an "inmate he was having problems with."

On April 26, 2022, Neal falsely told the warden that Plaintiff "committed PREA on him." Sergeant McGregor came to Plaintiff's cell and told him about

---

[2] Plaintiff indicates inmates use the term "white shirt" to refer to majors, captains, colonels, and lieutenants.

Neal's allegation. McGregor advised Plaintiff that Neal had previously made a false allegation against an inmate and that he told the captain that Neal's allegation was false. McGregor had Plaintiff fill out a statement, in which Plaintiff accused security of putting Neal in his cell "to falsely allege PREA."

McGregor then informed Plaintiff he would be placed in confinement. When Plaintiff asked why he was being placed in confinement over a false allegation, McGregor stated "they" told him that Plaintiff "had to be confined because strict PREA protocol and procedure had to be followed by law."

Both Plaintiff and Neal were placed in confinement on April 26 for a PREA investigation. McGregor brought Plaintiff his property later that night and told him not to worry about the PREA investigation "because no one actually followed PREA protocol and procedure and no one even cordon[ed] off [his] cell inside C-dorm."

On April 28, 2022, Defendant Oakes, along with Assistant Warden Dove and Classification Officer Metaleska, met as the ICT and told Plaintiff they concluded Neal's allegations were false. Nevertheless, the ICT decided to keep Plaintiff in confinement and put him "on special review against … Neal and pending a special review transfer."[3] Plaintiff asked the ICT why PREA protocol was not being followed and why he was being kept in confinement if the allegations were found to

---

[3] "Special review is the classification status assigned to inmates who pose a potentially serious threat to other inmates or staff or who pose a risk to the security and order of an institution." Fla. Admin. Code r. 33-601.211(1).

Case No. 3:23cv24730-LC-HTC

be false. Although Plaintiff never indicated to the ICT that he would harm Neal, Dove said she did not want Plaintiff "to get out and see [Neal] and beat him up for making false PREA allegations." Oakes added, "if you do meet up with him again you can finish raping him." As Plaintiff was exiting the room, Oakes "changed his voice to sound homosexual and girlish" and said "goodbye Johnnie." When Plaintiff turned around to ask for Oakes' name, Oakes falsely told Plaintiff it was "Major Toole."

The ICT later released Neal from confinement without issuing him a disciplinary report for making false allegations. However, Neal was later returned to confinement "for other issues." Because Plaintiff was also in confinement, at one point only a few cells away from Neal, he suggests the reason Dove gave for placing him on special review pending a transfer—the potential threat he posed to Neal—was fabricated.[4]

Plaintiff attempted to file grievances against "Major Toole," but the responses indicated no such person worked at Okaloosa CI. After learning Oakes' real name, Plaintiff filed grievances regarding the alleged misconduct; Oakes answered "a lot" of the grievances Plaintiff filed, but "he provided specious responses … to cover up and hide his … misconduct."

---

[4] Plaintiff also claims the fact he was assigned a cellmate on April 27 shows he did not pose a threat to other inmates.

Case No. 3:23cv24730-LC-HTC

Plaintiff "expresses a belief" that Oakes told Officer Cummins to pull Plaintiff out of his cell on May 3, 2022, and put him back in to "deceitfully make it appear as if he was taking [Plaintiff] to talk to someone about the PREA incident and [Plaintiff] refused to do so." Plaintiff filed a grievance about this incident, which Oakes denied. After remaining in confinement from April 26 to June 16, Plaintiff was transferred from Okaloosa CI to Gulf CI.

Plaintiff claims Gulf CI "is a prison that is known for assaulting and killing inmates," and Oakes had him transferred there as punishment for filing Case No. 3:22cv5101-MCR-ZCB. Plaintiff also asserts his placement in confinement and transfer to Gulf CI impeded from filing a timely notice of appeal regarding a post-conviction motion he filed.

Based on the foregoing, Plaintiff alleges Defendant Oakes: (1) violated the First Amendment by retaliating against him for filing Case No. 3:22cv5101-MCR-ZCB; and (2) violated his constitutional rights by denying him access to the courts. As relief, he seeks nominal and punitive damages, and a transfer "to a prison in Central Florida close to Tampa, Florida, away from North Florida."

## II.   Legal Standard

Because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking relief from a government employee, the Court must dismiss his complaint, or any portion thereof, if it determines it is frivolous or malicious, fails to state a claim on which

relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). To state a claim, Plaintiff must plead factual content which allows the Court to draw the reasonable inference the Defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must liberally construe Plaintiff's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. Discussion

#### A. First Amendment

To prevail on a First Amendment retaliation claim, an inmate must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted). "The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because [the inmate] complained of some of the conditions of his confinement." *Id.* at 1278 (citation omitted).

Here, Plaintiff's allegations fail to plausibly suggest Defendant Oakes was subjectively motivated to discipline him because of the lawsuit he filed, as he does not allege *facts* showing Oakes knew about the lawsuit. As an initial matter, some of the allegations Plaintiff makes are speculative—for example, he "expresses a belief" that Ms. Glenhardt told Oakes that Plaintiff had filed a lawsuit. These allegations are akin to allegations made "upon information and belief," which are conclusory and not entitled to a presumption of truth. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (declining to take as true allegations made upon information and belief which lacked the factual support to make them plausible).

Putting aside the conclusory allegations, Plaintiff's factual allegations indicate: (1) he gave Ms. Glenhardt or another legal mail employee a copy of the complaint in Case No. 3:22cv5101-MCR-ZCB for mailing; (2) Oakes had an interaction with Plaintiff in which he stated, "You're Johnnie Jordan? I finally get to meet you."; (3) at some unidentified time, Plaintiff heard Ms. Glenhardt "gossiping" with Oakes about grievances he filed; and (4) when asked who moved Neal into Plaintiff's cell, Neal stated, "the white shirt and them did dumb ass … , they don't like how you keep filing all them grievances and want to get you for filing that lawsuit on them folks."

These allegations are insufficient to establish Oakes knew about Plaintiff's lawsuit. The first three do not show Oakes had knowledge of the lawsuit and Neal's

statement is ambiguous as to which prison officials were responsible for moving him into Plaintiff's cell.[5]  Furthermore, Oakes was not named as a defendant in Case No. 3:22cv5101-MCR-ZCB, and the Court did not order service on any Okaloosa CI official in that case until November 2022.  *See Thomas v. Lawrence*, 421 F. App'x 926, 929 (11th Cir. 2011) (affirming dismissal of retaliation claim because prisoner's "grievance did not complain about any staff member except for Diaz, and his complaint failed to allege any facts that would suggest that any of the other named defendants had a reason to retaliate against him for filing the grievance against Diaz").  Thus, the allegations that Oakes retaliated against Plaintiff for filing the lawsuit fail to state a claim.  *See Farrow v. West*, 320 F.3d 1235, 1248-49 (11th Cir. 2003) (affirming grant of summary judgment to nurse on retaliation claim when nurse never received nor had knowledge of inmate's complaints).

Other aspects of Plaintiff's retaliation claim are also speculative.  He "expresses a belief" that Oakes told Dove and Metaleska about the lawsuit and persuaded them to: (1) put Neal into Plaintiff's cell to make a false PREA allegation so Plaintiff could be placed in confinement; and (2) assign him special review status and have him transferred.  These allegations are conclusory and, thus, not sufficient to nudge Plaintiff's claim that Oakes was responsible for the alleged retaliation

---

[5] Likewise, Plaintiff fails to explain how he knows Neal's statement that "they put me in here with you for me to watch you, and report back to them" refers to Oakes.

Case No. 3:23cv24730-LC-HTC

across the line from conceivable to plausible. *See Brown v. Anderson*, 2023 WL 1102568, at *4 (11th Cir. Jan. 30, 2023) ("We would have to speculate or pile inference upon inference to get from what the complaint said to what it needed to say. And this we will not do."). Plaintiff does not allege any facts indicating Dove and Metaleska knew about his lawsuit or that Oakes persuaded them to participate in a conspiracy to retaliate against Plaintiff. *See Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985) ("In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint.") (citation omitted). Nor does Plaintiff explain how Oakes knew Neal had a history of making false sexual assault allegations against inmates, or that he would do so when placed in a cell with Plaintiff.[6] In addition, although Plaintiff suggests the ICT released Neal from confinement before he became Plaintiff's cellmate, he also indicates "security" is responsible for deciding who will be cellmates. *See* Doc. 9 at 4-5 (alleging that before Neal was placed in his cell, Plaintiff had filed grievances asserting "security" was placing certain inmates in his cell so they would fight and he could be put in confinement).

Lastly, Plaintiff allegations indicate Oakes, Dove, and Metaleska had a valid non-retaliatory basis for keeping him in administrative confinement and transferring

---

[6] While Plaintiff alleges Sergeant McGregor indicated to him that Neal had made false allegations against another inmate before, Doc. 9 at 5, there is no indication Oakes, Dove, or Metaleska were aware of that incident.

him to Gulf CI—a concern that he would seek retribution against Neal for falsely accusing him of sexual assault.[7] Although Plaintiff asserts he never threatened and did not pose a danger to Neal, and officials could have transferred Neal instead of him, the Constitution does not guarantee a prisoner will be placed in any particular prison, *Meachum v. Fano*, 427 U.S. 215, 224 (1976), and courts must afford deference to state officials' administration of prisons. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (noting courts "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory") (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

In sum, Plaintiff's allegations are simply too conclusory and speculative to plausibly suggest Oakes: (1) knew about his prior lawsuit; and (2) orchestrated a scheme of retaliation which involved conspiring with Dove and Metaleska, having an inmate placed in Plaintiff's cell who would falsely accuse him of sexual assault, and having Plaintiff confined and transferred due to that accusation. As such, he has failed to state a claim for retaliation under the First Amendment. *See Leonard v. Monroe Cnty. Fla.*, 789 F. App'x 848, 850-51 (11th Cir. 2019) (finding conclusory

---

[7] Although Plaintiff notes Neal returned to confinement and was placed "a few cells away" from him pending his transfer, he does not allege he had any in-person encounters with Neal under this housing arrangement.

Case No. 3:23cv24730-LC-HTC

assertion that inmate was placed in confinement in retaliation for filing grievances is not enough to state a plausible claim for relief).

B.   **Access to the Courts**

Plaintiff also alleges his stay in confinement and transfer to Gulf CI made him miss a deadline to file an appeal in a state court case. Specifically, Plaintiff: (1) "expresses a belief" that Defendant Oakes, Ms. Glenhardt, and other security staff discarded a June 21, 2022 order issued by a judge which granted Plaintiff an extension of time to file a motion for rehearing following the denial of a Rule 3.800 motion, "which could have tolled the time for [him] to file the notice of appeal"; (2) asserts that order would have been mailed to Okaloosa CI but Plaintiff was transferred to Gulf CI on June 16, 2022; and (3) alleges Plaintiff never received the order and when he found out about the order, he filed a notice of appeal that was deemed untimely.

These allegations are insufficient to state an access to the courts claim for several reasons. First, like the retaliation allegations, the allegations regarding Oakes' role with respect to the legal mail are conclusory. Plaintiff admits he does not know who discarded the June 21, 2022 order at Okaloosa CI, Doc. 9 at 8, but simply speculates that Oakes, and others acting in concert with Oakes, must have done it in retaliation for the prior lawsuit. Similarly, Plaintiff alleges that while he was in confinement from April 26 to June 16, security staff responsible for passing

out and picking up legal mail would, "at certain times," "intentionally fail[] to make an announcement to the inmates that outgoing legal was being collected," which prevented him from filing a timely notice of appeal.[8]  These allegations fail to support a plausible claim for relief because they fail to establish a connection between Defendant Oakes and the security staff's actions.[9]  *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) ("[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation.") (citation omitted).

    Second, Plaintiff has failed to state an access to the courts claim because he has not described the issues he intended to present on appeal or why those issues had merit.  Plaintiff indicates he filed a Rule 3.800 motion to correct an illegal sentence imposed pursuant to the "10-20-Life" law, and that other defendants with identical sentences have been afforded relief.  However, these allegations are too vague to show his appeal was nonfrivolous. *See Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998) ("prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action").  Plaintiff has not described why his sentence

---

[8] The Court notes that, in Case No. 3:22cv5101-MCR-ZCB, Plaintiff provided documents to Okaloosa CI officials for mailing on May 11, May 20, May 24, and June 13.
[9] For the same reasons, to the extent Plaintiff asserts his alleged inability to file an appeal was another part of Oakes' retaliation, it fails to state a claim.

is illegal or how the state trial court erred by denying him relief on what he now contends is a meritorious claim. His failure to do so precludes him from stating an access to the courts claim. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."); *Allen v. St. John*, 827 F. App'x 1002, 1005 (11th Cir. 2020) ("Under Supreme Court precedent, it does not matter whether the defendants caused Allen to lose his earlier lawsuit if we cannot tell from his amended complaint whether that lawsuit was frivolous or arguably had some merit.").

## IV. Conclusion

After Plaintiff filed his original complaint, Doc. 1, the Court issued an order which described the applicable legal standards, advised Plaintiff the complaint failed to state a claim, and gave Plaintiff an opportunity to submit an amended complaint, Doc. 5. Plaintiff's amended complaint, however, continues to fail state a claim— namely, because the allegations supporting his retaliation and access to the courts claims are too speculative and conclusory. Because Plaintiff has failed to cure the deficiencies identified in the original complaint through amendment, this case should be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Brennan v. Comm'r, Ala. Dep't of Corr.*, 626 F. App'x 939, 945-46 (11th Cir. 2015) ("A *pro se* litigant must be given at least one opportunity to

amend his complaint before the court dismisses the action with prejudice if it appears that a more carefully drafted pleading would state a claim upon which relief could be granted.").

Accordingly, it is RECOMMENDED:

1. That Plaintiff's "Motion to Address the Honorable Court,"[10] Doc. 8, be DENIED.

2. That this case be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) due to Plaintiff's failure to state a claim on which relief may be granted.

3. That the clerk close the file.

At Pensacola, Florida, this 24th day of January, 2024.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] This motion seeks to warn the Court that actions taken by officials at Gulf CI "may affect his ability to comply with this Court's future orders in a timely manner." Doc. 8 at 1. The motion does not contain a cognizable request for relief, and any alleged misconduct by officials at Gulf CI is unrelated to the allegations in this case.

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.